OPINION
 THE ISSUE
In this case we hold that Miranda principles are not applicable to proceedings under Welfare and Institutions Code section 6500.1[1] (mentally retarded persons who are a danger to themselves or others). However, *Page 244 
we further hold that the trial court must, on appropriate motion, hold a Jackson v. Denno, 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], (Evid. Code, § 405) hearing regarding the voluntariness of statements to the police by the alleged mentally retarded person.
 FACTS
Emmett Shay is a 30-year-old mentally retarded person with an I.Q. of 57 and the emotional age of a 5- or 6-year-old. Unfortunately, Emmett has incendiary proclivities. He has set at least three fires, two residences and a car — all belonging to people at whom Emmett was angry.[2] Finally, he was arrested for arson but when the officers discovered his mental condition, Welfare and Institutions Code section 6500.1 proceedings were instituted. At trial, an officer proposed to testify about a conversation with Emmett in which Emmett told about setting three fires. Counsel had requested a hearing outside the presence of the jury, alleging that the statements were taken in violation ofMiranda and that they were not voluntary. The trial court ruled that these were civil proceedings, that the safeguards pertaining to criminal proceedings were not applicable and that the statements were admissible. Thereafter, the officer testified to Emmett's admission of three fires. Each of four doctors testified that Emmett had told him that he had set the fires. So, too, did Emmett's grandmother and a cousin. Emmett himself testified that he set fires but he said that he would not do it any more. He was found to be mentally retarded, dangerous and committed to a state hospital.
 DISCUSSION The Problem
In criminal proceedings aimed at the deprivation of an individual's life or liberty for alleged antisocial activity, our historic Anglo-Saxon distrust of the power of the state has, in those jurisdictions with a common law background, resulted in the formulation throughout the centuries of procedures aimed at curbing the power of the state. In this country, these have, particularly in the last 25 to 30 years, become highly formalized and increasingly complex. *Page 245 
On the other hand, in purely civil proceedings in which property or human rights, exclusive of loss of life or liberty, are involved, a more flexible system of factual and legal determinations exists.
Then, since the turn of the century, a new category of laws has emerged which does not fit comfortably into either the civil or criminal field. These have to do with society's efforts to handle the problems of those who cannot compete in life's open market — basically children and those with mental and psychological problems. Statutorily, since they are designed for the protection of the child or the person with mental or psychological problems, rules pertaining to civil litigation apply. However, under the guise of protection, the possibility of abuse always exists. Therefore, the courts have intervened in these statutory schemes and have increasingly mandated the trappings of criminal prosecution in these fields. This case falls squarely in this gray area between purely civil and purely criminal proceedings.
 Miranda
The basic purpose of Miranda is the need to deter improper law enforcement activities. (In re Martinez, 1 Cal.3d 641, 648 [83 Cal.Rptr. 382, 463 P.2d 734].) We find no need for the deterrent force of the criminal law exclusionary rule promulgated in Miranda in mentally retarded commitment proceedings. Unlike narcotic addiction proceedings (People v. Moore, 69 Cal.2d 674
[72 Cal.Rptr. 800, 446 P.2d 800]) and juvenile proceedings (In re Garth D., 55 Cal.App.3d 986 [127 Cal.Rptr. 881]), these proceedings have no relationship to the aims and objectives of law enforcement.
 Voluntariness and Jackson v. Denno
The basis of the rule that only voluntary statements be admitted is twofold, (1) the danger that an involuntary statement not be true, and (2) the danger that an individual may be compelled to incriminate himself. However, in recent years, the former ground has almost disappeared from legal and judicial literature and the "later cases are largely concerned with the protection of personal rights and the elimination of illegal police practices, regardless of the possible or probable truth of the confession." (Witkin, Cal. Evidence (2d ed. 1966) p. 437.)
As we all know, an enormous judicial library has developed on the subject of the voluntariness of confessions or admissions in criminal *Page 246 
cases. (Witkin, Cal. Evidence (2d ed. 1966) § 475 et seq.; Witkin, Cal. Criminal Procedure (1978 supp.) § 361A et seq.) Prominent in that library is the case of Jackson v. Denno,supra, 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], which held that a voir dire hearing must be held outside the presence of the jury to determine the admissibility of the confession. This has been codified in California in Evidence Code section 405 Here, the court is given the final responsibility for determining the admissibility of confessions or admissions and the court is required to make that determination outside the presence of the jury if the defendant so requests. (People v.Culver, 10 Cal.3d 542, 547-548, fn. 8 [111 Cal.Rptr. 183,516 P.2d 887].) The proof of voluntariness must be beyond a reasonable doubt. (People v. Jimenez, 21 Cal.3d 595
[147 Cal.Rptr. 172, 580 P.2d 672].)
The Supreme Court of this state has made it clear in Cramer
v. Tyars, 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793], that the mentally retarded person is entitled to the full panoply of the criminal law insofar as the issue of the voluntariness of his statement is concerned. Although that case characterized proceedings under Welfare and Institutions Code section 6500.1 as being "essentially civil in nature" and held that a subject of such proceedings could be called as a witness at the commitment hearing, the court advised that the privilege against self-incrimination must be respected in such hearings. The court said: "To the extent that the necessary elements of mental retardation and dangerousness may be established by evidence of criminal conduct, such evidence must, in its entirety, beelicited from sources other than the individual who is thesubject of the commitment proceeding. In the matter before us the trial court, referring to Tyars, observed that `This is not a proceeding in which he could refuse to testify on the grounds that his testimony might tend to incriminate him.' This was error." (Cramer v. Tyars, supra, 23 Cal.3d 131, 138; italics added.)
Use of a coerced confession of criminal conduct is proscribed by the privilege against self-incrimination guaranteed by both "the Federal and California Constitutions." (People v.Jimenez, supra, 21 Cal.3d 595, 605.) The privilege against self-incrimination contained in article I, section 15 of the California Constitution has been construed to provide even greater protection in some respects than the privilege guaranteed by the Fifth Amendment. (People v. Disbrow, 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].) The Jackson v. Denno
hearing is required by the due process clause of the Fourteenth Amendment "to insure a reliable and clear-cut determination of the voluntariness of the confession, including *Page 247 
the resolution of disputed facts upon which the voluntariness issue may depend." (Jackson v. Denno, supra, 378 U.S. 368, 391 [12 L.Ed.2d 908, 924].)
(1) Thus, where the commitment of a mentally retarded person depends on proof of criminal conduct, the Supreme Court of this state has ruled that the same due process safeguards designed to insure against use of involuntary confessions or admissions of criminal conduct in a criminal proceeding apply. Obviously, in either case, a finding that the allegations are true can result in involuntary incarceration of the subject. A mentally retarded person determined to be a danger to others faces possible loss of freedom for life as the result of successive recommitments. (SeeConservatorship of Roulet, 23 Cal.3d 219, 224-225 [152 Cal.Rptr. 425, 590 P.2d 1].) The instant case illustrates the shadowy line between a criminal proceeding and a Welfare and Institutions Code section 6500.1 proceeding. Emmett was initially arrested for arson and criminal proceedings were instituted, but apparently upon discovery of his mental retardation, section 6500.1 commitment proceedings were filed. The objective in either case was the commitment of Emmett to a state institution from which he would not be free to leave.
It is our conclusion that under the mandate of Tyars, the judge should have held a Jackson v. Denno hearing as codified in Evidence Code section 405 and the failure to hold such a hearing was error of constitutional proportions requiring the application of the Chapman test. (Chapman v. California,386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Inasmuch as the finding of dangerousness was based in part on the testimony of the police officers as to admissions by Emmett that he had set fires, we cannot find beyond a reasonable doubt that this error was harmless.
Judgment reversed.
Tamura, J., and McDaniel, J., concurred.
[1] Section 6500.1 was renumbered section6500 and amended by Statutes 1978, chapter 1319, section 2. All further references in this opinion to Welfare and Institutions Code section 6500.1 are to be construed as Welfare and Institutions Code section 6500
[2] Counsel's argument that Emmett is not really dangerous because he has only set three fires and these occurred about a year apart, falls on deaf ears. One fire is enough. A mentally retarded person who sets fire to the house of those at whom he is angry is a walking time bomb. Arson is a particularly terrifying crime since it strikes blindly and without warning.