[Crim. No. 10466. Third Dist. Aug. 13, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JEWELL FOWLER, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, James L. Larsen and Mark L. Christiansen, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Vincent J. Scally, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REGAN, Acting P. J.**—Defendant was convicted by jury of two counts of vehicular manslaughter (Pen. Code, § 192, subd. 3(a)) and one count of driving while intoxicated and causing bodily injury (Veh. Code, § 23101, subd. (a)). The trial court sentenced defendant to state prison for the middle term of two years on the felony drunk driving conviction (Veh. Code, § 23101, subd. (a)) and to one-year terms in the county jail on each of the manslaughter convictions (Pen. Code, § 192, subd. 3(a)). The jail terms are to run concurrently with each other but consecutively to the prison term.

Defendant appeals, raising contentions of erroneous admission of incriminating statements into evidence and of errors in sentencing.

On April 9, 1978, at approximately 10 p.m., a white Chevrolet traveling at a speed of 65 to 70 miles per hour entered the intersection of Sunrise Boulevard and Greenback Lane, in Sacramento County, against the red light and collided with a pickup truck. A passenger in the pickup, Edward Stoops, was killed and the driver of the pickup, Andrew Mark Enos, was injured. Soon after the accident an ambulance arrived at the scene. Already present was a sheriff's unit and a fire department vehicle. The ambulance attendants removed two persons from the white Chevrolet, with the help of fire department personnel. One was defendant, who was injured. The other was her husband, Robert Fowler, who died of his injuries shortly after the accident.

Defendant was found on the driver's side, "slumped up against the driver's door" of the car. Her husband was on the passenger side of the front bench seat. The dashboard of the car had collapsed and pinned his legs against the seat so tightly that "portapower" equipment from the fire department was required to extricate him.

At a nearby hospital, Officer Arnold Ramirez of the California Highway Patrol questioned defendant at approximately 10 minutes past midnight. During this initial interview defendant told the officer that her husband had been driving the car, that she had been drinking before the accident, and that she had had four or five drinks. She later changed her story to say that she had had two or three drinks, but no more. Ramirez concluded that at this time defendant was still under the influence of alcohol.

Shortly thereafter, defendant was arrested for felony drunk driving. En route to the county jail from the hospital, at about 3 a.m., Ramirez again interrogated defendant after advising her of her *Miranda* rights. She indicated that she understood her rights and that she wished to talk to him. Ramirez asked her who had been driving her vehicle and she responded that she had been driving it. He asked her whether she had been drinking and she responded that she had had four to five vodka and grapefruit drinks. When asked if she felt the effects of the drinks, she replied "[a]pparently so."

The defense at trial consisted of testimony of defendant that her husband was driving the white Chevrolet at the time of the accident, testimony of her sister that earlier in the evening the husband was driving the car when it left her house, and testimony of a witness who had seen a white car in Sunrise Mall, a large shopping center near Green-

back Lane, about 10 p.m. the night of the accident, which was being driven by a man with a woman passenger. Both the sister and the witness in Sunrise Mall heard the car sputtering and stalling. The witness in Sunrise Mall heard the sound of the accident after she had seen the car and upon arrival at the scene she thought one of the cars looked like the one she had seen shortly before in Sunrise Mall.

## I

■ Defendant contends the trial court erred reversibly in admitting her incriminating statement (that she had been driving the car) into evidence without holding a hearing on its admissibility outside the presence of the jury. We disagree.

■ Defendant's admission that she was driving the vehicle under the circumstances of this case was tantamount to a confession, since there was no dispute that the vehicle was the instrument of the deaths and injuries and that the cause was the unlawful operation of that vehicle.

■ It has long been established that any confession, or any admission or statement by the accused relative to the offense must be excluded if involuntary (see, e.g., *People* v. *Atchley* (1959) 53 Cal.2d 160, 170 [346 P.2d 764]). ■ Moreover, a defendant in a criminal case has a constitutional right at some stage of the proceedings to have a fair hearing and a reliable determination on the issue of voluntariness. This hearing must be by the court, not the jury. (*Jackson* v. *Denno* (1964) 378 U.S. 368, 376-383, 393 [12 L.Ed.2d 908, 915-918, 926, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; see Criminal Trial Judges' Benchbook (1971) p. 256c.) The right to such a hearing is triggered by an objection on any grounds to the admission of the incriminating statement. (See Jefferson, Cal. Evidence Benchbook (1978 Supp. § 23.3, p. 257.) In this case defendant made objection to the testimony of the officer to whom she had admitted driving the automobile. The ground of objection was that although she had been given her *Miranda* rights it was questionable that she was able to understand them and voluntarily waive them, since she was badly shaken by the accident and also intoxicated. She did not however ask for a hearing outside the jury's presence.

■ Upon defendant's objection, the trial court proceeded before the jury to elicit testimony bearing on the question, consisting of the

time lapse between the accident (10 p.m.) and the time she made the incriminating statement (3 a.m.). Based upon this, and with no offer by defendant to present further evidence on the subject, the court overruled the objection and the case proceeded, with the statement before the jury. The court did not deny to defendant an opportunity to present further evidence regarding voluntariness.

■ It is the law in California that, in a criminal action, if a defendant objects to the admissibility of a confession or admission on any ground, the court must determine the question of admissibility by (a) conducting a hearing out of the presence and hearing of the jury if the defendant (or the People) so requests, and (b) permitting all parties at such hearing to introduce evidence on the question of admissibility, including the defendant's personal testimony. (*People* v. *Rowe* (1972) 22 Cal.App.3d 1023, 1029-1031 [99 Cal.Rptr. 816]; Evid. Code, §§ 400, 402, 405; *People* v. *Bennett* (1976) 58 Cal.App.3d 230, 235-236 [129 Cal.Rptr. 679]; *Cramer* v. *Shay* (1979) 94 Cal.App.3d 242, 246 [156 Cal.Rptr. 303].)[1] ■ Since neither party requested an *in camera* hearing, the trial court was not required to order one *sua sponte*, and the possible constitutional error was not reached. (*People* v. *Culver* (1973) 10 Cal.3d 542, 547-548, fn. 8 [111 Cal.Rptr. 183, 516 P.2d 887].) The record leading up to the objection here challenged contains various references implying defendant's relative sobriety and self-control soon after the accident, strongly suggesting counsel's waiver was for tactical reasons. Whether this is true is, of course, irrelevant, since defense counsel was clearly not incompetent, and such matters for a reviewing court are largely speculative. (*People* v. *Lindsey* (1972) 27 Cal.App.3d 622, 631-632 [103 Cal.Rptr. 755].)

The trial court did not violate the law enunciated above. ■ Even if it had, the question would remain whether the error was prejudicial. The objection which defendant made to admission of the evidence of her statement was based not on the assertion that she had received no

---

[1]In dictum, *People* v. *Rowe*, despite the clear language of Evidence Code section 402, stated that a hearing must be held outside the jury's presence, whether requested or not. A study of the opinion's rationale (22 Cal.App.3d at p. 1030) for this proposition however (that if the court's ultimate ruling is that the confession or admission is involuntary, the prejudice is obvious) demonstrates that it is in reality no more than a holding that the preferable practice is to hold the hearing outside the jury's presence. *People* v. *Bennett* merely echoed the dictum (58 Cal.App.3d at p. 236) without analysis. *Cramer* v. *Shay* returned to a statement of the true rule (94 Cal.App.3d at p. 246) as expressed in Evidence Code section 402.

*Miranda* warning but that she had not knowingly waived her *Miranda* rights due to trauma from the accident and intoxication. At best, the trial court's asserted procedural error would not require reversal if it were "harmless beyond a reasonable doubt," which in turn would require that we find the error "did not contribute to the verdict obtained." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Bolton* (1979) 23 Cal. 3d 208, 214 [152 Cal.Rptr. 141, 589 P.2d 396].)

Given the uncontradicted physical facts of this case, we have no hesitation in finding any possible error to be harmless beyond a reasonable doubt. There is no way defendant's husband could have been the driver of the vehicle when he was pinned by the impact to the passenger side of the vehicle, his legs wedged between the seat and the dashboard. That had to occur at the instant of impact, and there is no room for speculation that defendant, who was found behind the steering wheel, could have been the passenger.[2]

II

Defendant contends the case must be remanded for sentencing error. The sentence was to state prison for drunk driving and to county jail for vehicular manslaughter. The jury had recommended county jail for the vehicular manslaughter. The probation officer had recommended probation on all offenses on condition of maximum time in the county jail, restitution of $100 and participation in the alcoholic rehabilitation program.

■ Defendant contends the trial court improperly denied probation and sentenced her to prison on the ground that she had refused to plead guilty. The record refutes this contention. The trial court did not sentence defendant to prison because she refused to plead guilty or exercised her right to a jury trial. The trial court considered her refusal to acknowledge guilt, notwithstanding the overwhelming evidence of guilt presented at trial, as an indication that she was not remorseful about her conduct and its tragic effects. The record indicates the trial court reasoned that her lack of remorse and refusal to face the serious-

---

[2]Having so concluded, we have disposed of the subcontention that the judgment must be reversed due to failure of the trial court to express the standard of proof it employed in determining the admissibility of the incriminating statement. (*People* v. *Jiminez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

ness of her conduct indicated she would not benefit from probation. Under California Rules of Court, rule 414(d)(9), the trial court is expressly authorized to consider whether the defendant is remorseful as one of the criteria in determining whether to grant or deny probation. The trial court may also consider the nature and circumstances of the defendant's offense, the defendant's appreciation of and attitude toward the offense, and his traits of character as evidenced by his behavior and demeanor at the trial. (See *People* v. *Morales* (1967) 252 Cal.App.2d 537, 547 [60 Cal.Rptr. 671].) By no reasonable interpretation of this record did the trial court sentence defendant to prison because she refused to plead guilty and forego a jury trial.[3] We find no basis on which to hold that the trial court abused its discretion as to the prison sentence.

■ Defendant contends the trial court abused its discretion by imposing consecutive sentences. The trial court imposed consecutive sentences for the reasons that (a) it concluded defendant would be a continuing danger to others if she continued to drink and drive, (b) her prior performance on probation was unsatisfactory, and (c) her crime involved multiple victims. Defendant asserts that only the second of these factors (prior performance on probation) was appropriate in this case and concludes the trial court abused its discretion by imposing consecutive sentences. We disagree.

Each of the factors referred to by the trial court in imposing consecutive sentences was appropriate to the disposition of the case. The record indicated clearly that defendant would present a danger to society if she were released on probation, since the probation officer's report indicated that she had a problem controlling her use of alcohol. She was shown to be previously unreliable in abiding by the restrictions of probation. She showed lack of remorse for her conduct. Under such circumstances, there was a probability that she might repeat the offenses for which she had been tried, and thus endanger the safety of others. The trial court properly considered these factors in imposing consecutive sentences.

■ The trial court properly considered the fact that defendant's crime involved multiple victims. Her conduct resulted in the death of

---

[3]It is the law, however, that *if* a trial court bases its sentencing decision on the fact that a defendant, although having no substantial defense to present, pleads not guilty and demands a jury trial, thereby inconveniencing the court, such a sentence is invalid since it penalizes a defendant for asserting a right (jury trial) to which he is entitled. (See *People* v. *Morales, supra*, 252 Cal.App.2d at pp. 542-546.)

two persons and the injury of a third. Under California Rules of Court, rule 425(a)(4), the court, in deciding whether to impose consecutive sentences, may consider the fact that a defendant's crime "involved multiple victims." Defendant claims, however, that this factor is inappropriate to circumstances, such as in the present case, where multiple convictions and the possibility of consecutive sentences arise from the defendant's conduct in committing *one* crime which produced multiple victims. She argues that the "multiple victim" criteria *only* refers "to a situation where a person is convicted of two or more crimes and one of those involved multiple victims." Defendant's interpretation of the rule is contrary to its plain language and would virtually eliminate its use in the decision to impose consecutive sentences. When the offenses arise out of the same transaction and involve crimes of violence, defendant's interpretation of rule 425(a)(4) would prohibit the criterion's use to impose consecutive sentences. Thus, rule 425(a)(4) would have no application to offenses arising from the same transaction involving multiple victims. We do not accept such a restrictive interpretation of the rule. The trial court properly considered the criterion of multiple victims in imposing consecutive sentences.

In short, each of the criteria the trial court considered was pertinent to the disposition of the case. There was no abuse of discretion in the imposition of consecutive sentences.

Defendant contends that even if the trial court properly imposed consecutive sentences for the manslaughter convictions, she may not receive the full one-year terms for each of them. She asserts that Penal Code section 1170.1, subdivision (a), applies in the imposing of consecutive sentences for a misdemeanor conviction, and under that section the proper sentence is one-third of the maximum term for that offense. For this proposition she relies upon *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549]. Since the filing of defendant's brief, the California Supreme Court, on January 24, 1980, modified its decision, rejecting its former interpretation of Penal Code section 1170.1, subdivision (a), with respect to misdemeanor convictions and holding that "[t]he judge who orders that a misdemeanor term be served consecutively to a previously imposed felony term thus retains discretion as to the length of the misdemeanor term and the power to maintain supervision over the defendant through probation by suspension of the execution of the term for an appropriate period. The latter

option would in many cases be foreclosed were the term limited to one-third of the maximum term since no realistic sanction for violation of probation would be available." (*Id.*, at pp. 537-538.)

The judgment is affirmed.

Paras, J., and Reynoso, J., concurred.

A petition for a rehearing was denied September 12, 1980, and appellant's petition for a hearing by the Supreme Court was denied October 15, 1980. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.