Opinion
ROTHMAN, J.
Defendant was convicted of several offenses relating to his driving under the influence of drugs and/or alcohol. The trial judge imposed a number of maximum consecutive misdemeanor sentences in county jail that totaled four years and three months. In addition to challenging this sentence, defendant raises several other claims of error on appeal.
I. Issues Other Than Sentencing
A. Speedy Trial Claim
Defendant was arrested on December 5,1979, for violations of Vehicle Code sections 23106, 14601 and 12500. Numerous prior convictions were alleged.
*Supp. 13 Defendant was arraigned on April 2, 1980, and agreed to a trial date of June 4.
The judge’s minutes of June 4th reveal: “On motion of defense . . . and good cause appearing, the case is continued to 7/30/80. . . . Defendant waives time for trial and stipulates that the People may have a further continuance, if necessary.”
On June 30th the minutes of the judge indicate that the case was continued to September 25, 1980, on motion of the defense with a stipulation to People’s further continuance.[1]
On September 25, counsel for both sides appeared for trial. Defendant was not in court because he was serving a one-year sentence in county jail on another matter. A “removal order” was issued and on Friday, September 26, defendant still was not in court. The court granted a People’s request to continue the case to Monday, September 29 over defendant’s objection.
On September 29 the case was trailed to September 30 and the court granted the People’s motion to continue the case to October 30. Defendant objected. The court allowed the continuance based on defendant’s earlier stipulation to a People’s continuance. The court treated the stipulation as a “time waiver” by defendant and concluded that it “was not conditioned on a showing of good cause. ...” The deputy city attorney present thought the continuance was required because of the unavailability of witnesses.
On October 30, defendant was in custody, and defense counsel objected to trailing the case to November 6 for pretrial motions and trial. On November 7, after certain proceedings in the master calendar court, discussed fixrther under section I-B infra of this opinion, the case was assigned to a trial court.
Defendant moved to dismiss the case under Penal Code section 1382 on the ground that the People were not allowed to continue the case while defendant remained in custody. The court denied defendant’s motion on the ground that good cause was shown by the People for a 30-day continuance because a witness was “on vacation and out of town.”
Defendant contends that he was denied his right to a speedy trial under Penal Code section 1382. We disagree.
*Supp. 14 Continuances in criminal cases, whether on behalf of the defense or prosecution, should be granted “only upon a showing of good cause.” (Pen. Code, § 1050.) When any party seeks a continuance, it is the court’s duty to ascertain the “good cause” therefor and meet the other requirements of Penal Code section 1050.[2] There is nothing in the record herein reflecting the “good cause” justifying the two defense continuances. Under these circumstances, we can only assume that the continuance was for the convenience of the defense. In such a case, the “stipulation” to a People’s continuance, in essence, amounts to an agreement whereby People and the court do not demand a showing of good cause in exchange for a promise by the defendant to waive time for a future People’s continuance if needed.
Although this procedure appears to be widespread in the trial courts, it has never received approval.
So long as a defendant is not coerced into offering the “stipulation to a People’s continuance” as a condition for receiving a justified continuance, we see no reason to disapprove the practice. In light of the staggering case load burdens under which the municipal courts struggle, and provided that the policy articulated by the Legislature in Penal Code section 1050 is not flouted by excessive continuances, this practice facilitates the functioning of the courts.
*Supp. 15 The agreement by the defendant herein was not limited by its own terms and, therefore, defendant argues that continuance by the People would be limited to 30 or 45 days by analogy to Penal Code section 1382. In the absence of an express understanding otherwise, we agree with the trial court that no such limited interpretation of the “stipulation” was warranted. The court had authority to grant a reasonable request, that is, a continuance not sought arbitrarily or for an unlimited period, but rather one that is sought for a reason (albeit not necessarily “good cause”) and for a reasonable period of time.
In view of the continuances granted the defendant, we conclude that the trial court correctly concluded that the People’s request for a continuance was reasonable in light of all the circumstances in this case.
B. Withdrawal of Stipulation to Commissioner
On November 7, the date for hearing on motions and trial, the parties appeared before a court commissioner sitting in a master calendar court. The defense requested an “indicated sentence” on a plea of guilty, and the commissioner complied. The People, on hearing the indication, said they would not consent to the commissioner. Defendant objected to the People’s conduct, and the commissioner upheld the People’s right to refuse to stipulate to his sentencing. He then assigned the case to a trial court.
Defendant contends that the People’s attempted withdrawal of their stipulation for a commissioner to hear the case was ineffective because the commissioner had the power to sentence defendant and the People failed to move to disqualify the commissioner. This contention is without merit. When the parties have not stipulated that a commissioner may act as a temporary judge, the commissioner has only the authority to perform “ ‘subordinate judicial [duties]’ ” which do not include the power to sentence a defendant. (People v. Oaxaca (1974) 39 Cal.App.3d 153, 158, 165 [114 Cal.Rptr. 178].) The record fails to show that the People orally, or in writing, stipulated for the commissioner to act as a temporary judge. The People’s statement that they were “withdrawing” their stipulation “that a commissioner go forward in this case” does not establish that they agreed the commissioner could act as a temporary judge.
The previous proceedings before the commissioner consisted entirely of “subordinate judicial dutfies].” When the parties first appeared before him on November 7, it was for the purpose of being assigned out to trial. On defendant’s own initiative, discussion ensued regarding the possible plea bargain. The bargain was never completed and the commissioner stated only what his “intended” sentence would be. The People did not act in such a manner as to have effectuated a “de facto stipulation” for the commissioner to sentence the defendant. {Id., at p. 162.) While the People participated to some extent in the *Supp. 16 bargaining by proposing a sentence, no bargain was reached, no sentence was imposed nor attempted to be imposed, the offer of an “intended” sentence was rejected by the People, and they were not required to move to disqualify the commissioner from sentencing defendant.
C. Hearing on Motion to Suppress
On being assigned to a trial court, testimony was taken on the motion under Penal Code section 1538.5 “to suppress the arrest itself, anything flowing from the arrest, including a blood sample, any of the defendant’s statements, any opinions deduced from the arrest of the defendant, any urine tests.”
Police officers testified that on December 5, 1979, they investigated a traffic accident involving three vehicles. Defendant was identified as the driver of a sports car which had struck two of the cars. Defendant’s eyes were bloodshot; he was incoherent, could not stand up, had poor coordination, and had an odor of alcohol. The police officers were of the opinion that defendant had been driving under the influence of drugs or alcohol. Defendant was taken from the scene in an ambulance. At Riverside Hospital, defendant was found by the officers on a hospital bed in an unconscious state. Defendant was placed under arrest while he was unconscious and the officers requested a blood sample. After the sample was taken, defendant was “unarrested” because further hospitalization was warranted.
The paramedic who transported defendant testified that defendant “appeared to be very unsteady on his feet, had a very difficult time communicating verbally, wavered when he tried to stand up without leaning on something. ...”
The trial court denied the motion to suppress.
The arrest of defendant while he was unconscious was not lawful. (Carrington v. Superior Court (1973) 31 Cal.App.3d 635, 642 [107 Cal.Rptr. 546]; but see People v. Lane (1966) 240 Cal.App.2d 634 [49 Cal.Rptr. 712].) However, the seizure of defendant’s blood was lawful based on the “exigencies of the situation.” (See Carrington, supra, 31 Cal.App.3d atp. 642.) “[W]here time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to . . . secure a warrant.” (Schmerber v. California (1966) 384 U.S. 757, 770-771 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826].) Defendant’s unconscious state made it impossible to comply with Penal Code section 841 by telling the defendant he was under arrest. (Carrington, 31 Cal.App.3d at p. 639.) The blood test had to be taken when it was in order to avoid the “destruction” of the evidence by the passage of time. (Schmerber, supra, 384 U.S. 757.)
*Supp. 17 There was ample probable cause to believe defendant was under the influence of intoxicants. (See People v. Evans (1959) 175 Cal.App.2d 274 [345 P.2d 947].) The officer acted properly in ordering the blood test.
D. Defendant’s Admission
While defendant was being transported he said that he “had four Quaaludes and two beers” in response to questions by the paramedic in an attempt to ascertain whether defendant was injured or his condition was due to some intoxication. Since no custodial interrogation was involved when defendant made the incriminating statement, the procedural safeguards set forth in Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] did not apply. (In re Eric J. (1979) 25 Cal.3d 522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].) Absent a showing that the investigating police officers participated in the questioning of defendant by the paramedic, it was not necessary that defendant be advised of his Miranda rights. (Ibid.)
E. Evidence From Medical Records
During the trial, defendant objected to the admissibility of medical records from Riverside Hospital and the University of Southern California Medical Center (USC). Pursuant to Evidence Code section 352, the court excluded the records from Riverside Hospital, but admitted the records from USC under Evidence Code section 1271.
Dr. Forrest Tennant, an expert in the field of drug abuse, testified that in his opinion the medical records from USC showed that defendant had ingested several drugs, including PCP. Defendant’s assertion of the physician-patient privilege was overruled. Two criminalists testified that no alcohol or Quaaludes were found in defendant’s blood, but, a combination of barbiturates, including the prescription drug Tuinol, were found in defendant’s blood.
Defendant contends that the court erred in admitting the USC medical records into evidence, in failing to admit into evidence portions of the Riverside Hospital records, and in overruling defendant’s objection to Dr. Tennant’s testimony. The court committed no reversible error regarding these evidentiary rulings.
The USC medical records qualified as a business record under Evidence Code section 1271.
Defendant argues that entries in the records stating “Quaaludes and ethanol,” “Tonight to get high,” “overdose?,” and “probably Tuinol overdose. P.C.P.” were untrustworthy. However, it is settled that a patient’s “‘com *Supp. 18 plaint; personal and family history; history of present illness’ ” are admissible matters in medical records. (People v. Gorgol (1953) 122 Cal.App.2d 281, 299, 300 [265 P.2d 69].) The entries to which defendant objects appear to be his explanation of what drugs he took and the attending doctor’s diagnosis. The trial judge was not required to assume that this history came from a person or persons other than defendant, nor was the trial judge required to find that the prejudice from the records outweighed their probative value. The records served to establish that defendant was under the influence of drugs.
The court excluded the Riverside Hospital’s records on defendant’s objection that their probative value was outweighed by their prejudicial effect. The court refused later on to allow defendant to bring out portions of these records, relating to the physical examination of defendant’s eyes. The ruling was correct since the records were not in evidence. Furthermore, the relevancy was so minimal that the rejection of the evidence could not amount to a miscarriage of justice. (Evid. Code, § 354.)
Defendant’s assertion of the “physician-patient” privilege to preclude Dr. Tennant’s giving his opinion of defendant’s medical condition based on the medical records was properly denied. The physician-patient privilege is inapplicable in criminal proceedings. (Evid. Code, § 992.) Defendant contends that Evidence Code section 992 should apply only “when the medical examination was voluntarily submitted” to, citing People v. Guiterez (1932) 126 Cal.App. 526, 530 [14 P.2d 838]. Guiterez holds that when a defendant voluntarily consents to a medical examination he cannot later contend he was compelled to become a witness against himself.
n. Sentencing Issues
The sentencing history of this matter reveals:

Appeal No. CRA 18792 (offense of Apr. 10, 1978):

In 1978 defendant pleaded no contest to hit and run (a violation of Veh. Code, § 20002, subd. (a)) and reckless driving (a violation of Veh. Code, § 23103). He was given 36 months probation (with 15 days in jail as 1 of the conditions thereof).
On February 3, 1981, after being found in violation of probation, defendant was sentenced to 90 days in county jail consecutive to any other sentence.

Appeal No. CRA 18790 (offense of July 7, 1978):

In 1978 defendant pleaded guilty to driving under the influence of drugs (a violation of Veh. Code, § 23105, subd. (a)), and was given 36 months probation (with 15 days in county jail as 1 of the conditions thereof).
*Supp. 19 After he was found in violation of probation on February 3, 1981, he was sentenced to one year in county jail consecutive to any other sentence.

Appeal No. CRA 18791 (offense of Sept. 21, 1978):

In 1979 defendant pleaded guilty to driving under the influence of drugs (a violation of Veh. Code, § 23105, subd. (a)), and was given 36 months probation (60 days in county jail being a condition thereof).
After being found in violation of probation, he was sentenced on February 3, 1981, to one year in county jail consecutive to any other sentence.

Appeal No. CRA 18789 (offense of Dec. 5, 1979):

Defendant pleaded no contest to driving with a suspended or revoked license (a violation of Veh. Code, § 14601, subd. (a)) and driving without a license (a violation of Veh. Code, § 12500). Following the trial discussed in section I, ante, he was found guilty of causing bodily injury while driving under the influence of a drug (a violation of Veh. Code, § 23106). He was sentenced on February 3, 1981, to one year in county jail for the violation of Vehicle Code section 23106 consecutive, and one year in county jail and fined $1,000 for the violation of Vehicle Code section 14601, subdivision (a) consecutive. The sentence for a violation of Vehicle Code section 12500, subdivision (a) was concurrent.
In total, defendant was thus sentenced to four years and three months in county jail.
It has long been held that a municipal court, with a jurisdictional limit of a maximum sentence of one year or less in county jail, could impose a consecutive sentence totalling a period in excess of one year. (People v. Carr (1936) 6 Cal.2d 227 [57 P.2d 489]; People v. De Casaus (1957) 150 Cal.App.2d 274, 280 [309 P.2d 835]; People v. Blume (1960) 183 Cal.App.2d 474 [7 Cal.Rptr. 16]; and see United States v. Manjarrez-Arce (S.D.Cal. 1974) 382 F.Supp. 1046.)
Although the facts in People v. Carr, supra, 6 Cal.2d 227, related to a sentence of four years (consisting of four consecutive sentences), the court only addressed the issue of whether a municipal court could sentence to more than one year. The Carr case did not address the question of the maximum permissible misdemeanor sentence.
*Supp. 20 That case arose as a result of the ambiguity in Penal Code section 19a as it then read: “In no case shall any person sentenced to confinement in a county or city jail on conviction of a misdemeanor, or as a condition of probation, or for any reason, be committed for a period in excess of one year. ” After the Carr case, Penal Code section 19a was amended to make it clear that the one-year limitation controls “except upon conviction of more than one offense when consecutive sentences have been imposed. ...”
Effective in 1978, California’s Indeterminate Sentence Law was replaced by “determinate” sentencing, a change that significantly altered felony sentencing. A particularly important aspect of the new law was the placing of strict limitations on consecutive sentencing for felonies. (Pen. Code, § 1170.1.)
As a result, except for the most serious felonies, when a person is convicted of two or more felonies (either in the same proceeding in one court, or different proceedings in different courts), after the “base term” is selected, the imposition of consecutive sentences is subject to a number of limitations: (1) the court may impose only “one-third of the middle term” consecutively; (2) in no case may the aggregate of consecutive sentences imposed exceed five years; and (3) in no event may the total term of imprisonment be more than “twice the number of years imposed by the trial court as the base term. ...” (Pen. Code, § 1170.1, subds. (a), (g).)
There are, of course, significant exceptions to these consecutive sentence limitations. For example, as to very serious offenses, such as kidnaping, “violent felonies” or rape, there exists a greater potential consecutive sentence. (Pen. Code, § 1170.1, subds. (a), (b) and (g), § 667.5, subd. (c), and § 667.6, subd. (d).)
The Legislature has thus imposed clear limitations on consecutive sentencing as to ordinary felonies, and permitted longer consecutive sentences as to offenses it deemed the most serious.
As a consequence of this sentencing scheme, a person charged with 20 separate burglaries could receive a maximum sentence of 11 years (a maximum 6-year base term, with consecutive sentences limited to a total of 5 additional years). In the absence of a like limitation as to consecutive misdemeanor sentences, a person convicted of 20 burglaries in a municipal court could receive 20 years in county jail. A number of authorities have dealt with some of the problems posed by this anomaly.
The case of In re Eric J. (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549] dealt with a minor committed to the Youth Authority for burglary (a felony) and for contempt of court based on a violation of a prior probationary *Supp. 21 order of the court (a misdemeanor). The juvenile court set the maximum term of commitment at three years for the burglary and six months for the misdemeanor attempt. The Supreme Court, however, ordered the commitment order modified to a term of three years for the burglary and two months (i.e., one-third of the maximum) for the misdemeanor.
Much of the opinion dealt with a claim of denial of equal protection with respect to the felony sentencing aspect of the case (the selection of the high term of three years instead of the two-year mid-term without a finding of aggravation), and issues of precommitment credits. In that part of the opinion dealing with consecutive sentencing, the court found that the general language of Welfare and Institutions Code section 726, subdivision (c),[3] referencing Penal Code section 1170.1 (which relates only to felonies) must be given application to misdemeanors under the rule that requires reasonable interpretations of laws rather than interpretations “productive of absurd consequences,” citing Clements v. T. R. Bechtel Co. (1954) 43 Cal.2d 227, 233 [273 P.2d 5]. The absurd consequence is summarized by this language in the opinion: “The interpretation of section 726 urged by the People would lead to the following result: A minor committed for the period of the maximum term for a principal felony offense, and one-third of the middle term of a ‘sixteen months, two years, three years’ subordinate felony offense, could be confined for an aggregate maximum period four months shorter than a minor committed for the same principal offense but with a subordinate misdemeanor offense having a one-year maximum term. This anomaly does not appear to have been within the contemplation of the Legislature.” (In re Eric J., supra, 25 Cal.3d at p. 537.)
Although the court in Eric J. dealt with the meaning of a Welfare and Institutions Code provision which provided it with a clearer direction than the problem faced here, the anomaly described therein continues to be posed by the prospect of any multiple full consecutive misdemeanor sentence.
In 1981 the Attorney General issued an opinion directed to the Board of Prison Terms in response to a question concerning the indeterminate commitment of a mentally disordered sex offender. (63 Ops.Cal.Atty.Gen. 199 (1980).) Under the Mentally Disordered Sex Offender Law, no provision comparable to Welfare and Institutions Code section 726, subdivision (c) existed. The question there was how to calculate the “maximum term of commitment” for multiple misdemeanors. After discussion of the statutory scheme and People v. Carr, supra, 6 Cal.2d 227, in light of the determinate sentencing law, the Attorney General of California reached this conclusion: “The maximum term *Supp. 22 of commitment within meaning of Welfare and Institutions Code section 6316.1 and Penal Code section 1026.5 with respect to misdemeanors is computed by adding the maximum jail term for each such misdemeanor to any maximum term of commitment for felonies as computed under those sections provided that the resulting maximum term of commitment may not exceed that which would result if the same misdemeanor offenses had been punished as felonies. For the purpose of determining such limit on the maximum term of commitment, those misdemeanor offenses which do not have alternative felony terms prescribed by law should be treated as if they had been a felony with punishment as prescribed by Penal Code section 18.” (63 Ops.Cal.Atty.Gen. 199, 200.)
The Attorney General pointed out the same potential anomaly of unlimited consecutive misdemeanor sentencing: “To accept this construction without limitation would lead to absurd and clearly unintended results in some cases. Take for example the case of an MDSO who has an underlying conviction on seven counts of unlawful intercourse, in violation of Penal Code section 261.5 which is punishable as either a felony (sixteen months, two years in state prison) or a misdemeanor (not more than one year in county jail) depending upon the recommendation of the jury. (See Pen. Code, §§ 18, 264.) Under the above interpretation of section 6316.1, if the MDSO were convicted of seven misdemeanor counts, his maximum term of commitment would be seven years (one year for each offense). However, if he were convicted of seven felony counts, his maximum term of commitment would be six years.” (Id., p. 202.)
The Attorney General then evaluated the limited impact of In re Eric J., reaching, finally, this central issue: “In In re Eric J., supra, the court struck down a provision in the Welfare and Institutions Code, which authorized the Youth Authority to maintain control over convicted misdemeanants committed to its care as youthful offenders for a period in excess of the maximum jail term permitted by statute for the offense or offenses committed. The court found the right to liberty to be a fundamental interest and that the state failed to establish a compelling interest justifying a statutory distinction which would permit a youthful offender to be subject to a longer period of confinement than a regular adult offender.
“In the case of an MDSO, we have seen that if section 6316.1 were construed literally without regard to constitutional limitations, in some cases an MDSO with underlying misdemeanor convictions would be subject to a longer maximum term of commitment than that to which he would have been subject had the crimes of which he was convicted been felonies. That interpretation clearly would violate the principle of equal protection of laws.
*Supp. 23 “However, that interpretation is not required. A statute is presumed constitutional and must be interpreted in harmony with constitutional requirements. (California Housing Finance Agency v. Elliott (1976) 17 Cal.3d 575, 594.) Section 6316.1, subdivision (c) limits the maximum term of commitment for multiple misdemeanors to the maximum “which could have been imposed” by the court. Although the court in In re Eric J. stated that the one-third formula of Penal Code section 1170.1 was not applicable to misdemeanor sentences, and that courts have a certain amount of discretion with regard to choosing the length of a misdemeanor term up to the statutory maximum, it did not suggest that a court could constitutionally aggregate misdemeanor terms so that a defendant would receive a longer period of incarceration than had the crimes of which he was convicted been felonies. We also note that the court in In re Eric J. pointed out that an adult who received a misdemeanor sentence consecutive to a felony sentence would not be subject to a continuous period of confinement under the supervision of the same correctional agency. In the case of an MDSO commitment, the defendant is subject to a continuous period of confinement at a state hospital or other mental health facility irrespective of whether the underlying convictions are for felonies or misdemeanors. (See §§ 6316, 6325.1.) We conclude that the principle of equal protection of laws would preclude a court from sentencing a defendant to a continuous period of confinement in county jail on the basis of consecutive misdemeanor counts for a term longer than he would have received had the crimes of which he was convicted been felonies. The phrase, “which could be imposed,” in section 6316.1 incorporates the same principle of equal protection into the computation of the maximum term of commitment by the Board.
“We conclude, therefore, that section 6316.1, when construed in light of the constitutional requirement of equal protection of laws, provides that when aggregating the terms of underlying misdemeanors to determine the maximum term of commitment, the Board must use the statutory maximum jail term for each misdemeanor offense. However, the maximum term of commitment may not exceed that which would obtain had the offenses of which the defendant was convicted been felonies. Thus, there is an upper limit on the maximum term of commitment in cases where one or more of several underlying offenses are misdemeanors. In the case of conviction for a misdemeanor where the offense has an alternate felony sentence, (see Pen. Code, § 17) an MDSO’s maximum term may not exceed the maximum term which he would have received had the crimes of which he was convicted been determined to be felonies rather than misdemeanors. In the case of misdemeanors with no alternative felony punishment, the MDSO’s maximum term may not exceed the maximum term which he would have received had the misdemeanors of which he was convicted been punishable as felonies under Penal Code section 18, i.e., with a minimum determinate sentence of sixteen months, two years or three years.” (Id., at pp. 206-207.)
*Supp. 24 Any interpretation of California’s statutory scheme of punishment which would lead to potential misdemeanor sentences, which are either clearly in excess, or proportionally in excess, of sentences for more serious offenses, might well deny a defendant so sentenced equal protection of the laws. “ ‘The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.’ ” (In re Gary W. (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201].)
This concept is clearly embodied in the adult penal laws of California, as evidenced by Penal Code section 1170, subdivision (a)(1), which provides: “The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances. The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion. ’’ There is no reason to think that goal of uniformity in sentencing does not apply when the crimes involved are misdemeanors. Were such disparate sentencing possible in misdemeanor cases, a serious question of a violation of the constitutional prohibition against cruel or unusual punishment would arise.[4]
A punishment is cruel or unusual in California if it “is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.” (In re Lynch (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) To determine the question, the court may:
1. Examine the “nature of the offense and/or offender” and whether there is a rational gradation of culpability. (Id., at p. 435; In re Foss (1974) 10 Cal.3d 910, 919-920 [112 Cal.Rptr. 649, 519 P.2d 1073].)
2. Compare the “questioned punishment with punishments imposed within the same jurisdiction for offenses which may be deemed more serious than that for which the questioned punishment is imposed.” (Foss, supra, at p. 920.) A punishment may be “suspect” if “more serious crimes” are punished “less severely than the offense in question.” (Lynch, supra, 8 Cal.3d at p. 426.)
3. Compare the “challenged penalty with punishments prescribed in other jurisdictions for the same offense.” (Foss, supra, 10 Cal.3d at p. 920; Lynch, supra, 8 Cal.3d at p. 427.)
*Supp. 25 It can be argued that, were there no limitation placed on the number and length of multiple consecutive sentences for misdemeanors, California penal laws would present an irrational array of punishments, leaving offenses characterized by law as misdemeanors conceivably open to punishments in excess of the maximum permissible punishment for what are accepted as more serious offenses. With appropriate limitations on consecutive misdemeanor sentences, there would be a natural and sensible gradation of punishment, based on the seriousness of the offense consistent with the clear intent of California’s penal laws.
One might also argue that a person as lawless as defendant ought to be locked away for four years. There were here repeated offenses, and the behavior involved was extremely dangerous. Yet, while the same argument can be posited where a person is charged with multiple burglaries, a crime clearly regarded as more serious, the total sentence that could be imposed in such a case is severely limited by virtue of the fact that the crime is classified as a felony.[5]
Regardless of the fact that a majority of this panel find validity in these considerations, we are all satisfied that we are required to affirm the sentence based on our obligation to follow the established precedent (Auto Equity Sales v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]). In People v. Fowler (1980) 109 Cal.App.3d 557 [167 Cal.Rptr. 235], the accused was convicted of manslaughter and felony drunk driving. The trial court sentenced the accused to two years in state prison for felony drunk driving, and one year in county jail consecutive for manslaughter. This consecutive sentence *Supp. 26 was challenged without success. In upholding the sentence, the court relied on this language from In re Eric J., supra, 25 Cal.3d at pages 537-538: “Although the Legislature clearly indicated its intent that the aggregation provisions of Penal Code section 1170.1, which limit consecutive terms to one-third of the middle determinate term, apply only in imposing sentence for felonies, we are not persuaded that the Legislature intended that this distinction apply in determining the maximum period of confinement for minors committed by the juvenile court. The limitation of section 1170.1 reflects a legislative recognition that misdemeanor terms, unless imposed concurrently with a felony term, are served in local detention facilities and are not part of a continuous period of imprisonment under the supervision of the same correctional officials. The judge who orders that a misdemeanor term be served consecutively to a previously imposed felony term thus retains discretion as to the length of the misdemeanor term and the power to maintain supervision over the defendant through probation by suspension of execution of the term for an appropriate period. The latter option would in many cases be foreclosed were the term limited to one-third of the maximum term since no realistic sanction for violation of probation would be available.” (Paraphrased in Fowler, supra, 109 Cal.App.3d at pp. 567-568.) Although neither In re Eric J. nor People v. Fowler were addressed with the precise issue posed here (multiple consecutive maximum sentences in misdemeanors), the holding of both cannot, in our view, be sensibly distinguished. These cases clearly hold that maximum consecutive misdemeanor sentences are proper. (See also, People v. Pearson (1981) 120 Cal.App.3d 782, 789-790 [175 Cal.Rptr. 43] and People v. Hartsfield (1981) 117 Cal.App.3d 504 [172 Cal.Rptr. 794].) Although no case has examined issues of equal protection or cruel or unusual punishment relative to maximum consecutive sentences in misdemeanors, it is not for this court to overturn the above precedents.
The judgment is affirmed.
Bernstein, P. J., concurred.

The clerk’s docket entry of these two dates characterizes the stipulation thusly: “. . . that the People are entitled to a further continuance if required by reason of this continuance.” We have no reporter’s transcript of what actually was said.

PenaI Code section 1050 read as follows in 1980:
“The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. It is therefore recognized that both the people and the defendant have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings in the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings.
“To continue any hearing in a criminal proceeding, including the trial, a written notice must be filed within two court days of the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance. Continuances shall be granted only upon a showing of good cause. The convenience of the parties is not in and of itself good cause. Upon a showing that the attorney of record at the time of the defendant’s first appearance in the superior court is a Member of the Legislature of this state and that the Legislature is in session or that a legislative interim committee of which the attorney is a duly appointed member is meeting or is to meet within the next seven days, the defendant shall be entitled to a reasonable continuance not to exceed 30 days. A continuance shall be granted only for that period of time shown to be necessary by the evidence considered at the hearing on the motion. Whenever any continuance is granted, the facts proved which require the continuance shall be entered upon the minutes of the court. Whenever it shall appear that any court may be required, because of the condition of its calendar, to dismiss an action pursuant to Section 1382 of this code, the court must immediately notify the Chairman of the Judicial Council.” Subsequent changes in this statute are not germane to the issue herein.

Welfare and Institutions Code section 726, subdivision (c) provides in pertinent part: “If the court elects to aggregate a period of physical confinement on multiple counts, or multiple petitions, . . . the ‘maximum term of imprisonment’ shall be specified in accordance with subdivision (a) of section 1170.1 of the Penal Code.”

United States Constitution, Amendment VTII; California Constitution, article I, section 17 provides: “Cruel or unusual punishment may not be inflicted or excessive fines imposed.”

The 1981 Sentencing Practices Report of the Board of Prison Terms issued on February 10, 1983, indicates that arithmetic average (mean) sentence for the 81 persons sent to state prison for drunk driving with injury was 24.2 months. If such an inmate participated in a work program under Penal Code section 2933 (enacted in 1982), he or she would receive a credit of 50 percent on the sentence, and be released after 12.1 months. The defendant herein was convicted of several offenses that we would all accept to be clearly less serious than drunk driving with injury and was sentenced to serve 51 months in jail. He would have received credits of one-third, and be eligible for release after serving 34 months.
To suggest, as our concurring brother does, that this anomaly in disparate consecutive sentencing might be solved by legislation lifting the limitations on consecutive sentencing for felonies begs the question. At this moment in California the Legislature has not seen fit to lift these limitations.
The concurring opinion alleges that differences between a county jail sentence and a state prison sentence might justify longer relative incarceration in county jail. Apparently the amenities of county jails are superior to prison. The fact is that county jails have never been regarded as appropriate for long-term confinement. Furthermore, as already noted, any possible difference would seem to be wiped out by the significant good-time work-time credit differences created by Penal Code section 2933.
Finally, we note that the concurring opinion mischaracterizes our view on the constitutionality problems of the sentence herein. We are not saying that Penal Code section 19a is unconstitutional. That section only allows for a misdemeanor sentence in excess of one year; it does not set out what maximum length of consecutive sentences in misdemeanor cases is permissible. The constitutional question thus exists only when one interprets section 19a to permit maximum consecutive misdemeanor sentences.