Filed 12/5/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDON JAMES BERCH,<br><br>    Defendant and Appellant. | G055344<br><br>(Super. Ct. No. P02253)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Edward W. Hall, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

INTRODUCTION

Defendant Brandon James Berch objected to having a commissioner preside over his preliminary and final parole revocation hearings. His objection was overruled. The commissioner revoked defendant's parole and committed him to 120 days in jail.

Government Code section 71622.5 authorizes commissioners to conduct parole revocation hearings as a necessary part of the implementation of the Criminal Justice Realignment Act of 2011. However, article VI, sections 21 and 22 of the California Constitution limit commissioners to the performance of "subordinate judicial duties" in the absence of a stipulation by the parties.

We hold that revoking parole and committing a defendant to jail for violation of parole are not subordinate judicial duties that may be performed by a commissioner in the absence of a stipulation by the parties. As has long been recognized: "the issuance of an order which can have the effect of placing the violator thereof in jail is not a 'subordinate judicial duty.'" (*In re Plotkin* (1976) 54 Cal.App.3d 1014, 1017.) Because defendant did not stipulate to the commissioner revoking his parole and committing him to jail, the postjudgment order must be reversed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant was convicted of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and carrying a concealed dirk or dagger (Pen. Code, § 21310). In June 2017, defendant was accused of violating his parole by failing to (1) enroll in and complete a drug treatment program; (2) participate in and complete a batterer's program; (3) report to and actively participate in a sex offender treatment program; and (4) charge his GPS device as instructed. The Department of Corrections and Rehabilitation petitioned for revocation of his parole.

2

The preliminary hearing for defendant's parole revocation matter was set before Commissioner Edward W. Hall. Defendant refused to stipulate to a commissioner hearing the parole revocation matter. The preliminary hearing proceeded over defendant's objection. Commissioner Hall found sufficient probable cause that defendant had violated the conditions of his parole, and set a hearing on the petition for revocation of parole.

At the final revocation hearing on July 7, 2017, defendant admitted his parole violations and was committed by Commissioner Hall to 120 days in the Orange County jail with a total of 66 days credit for time served. Defendant filed a notice of appeal.

## DISCUSSION

### I.

### *IS THE APPEAL MOOT?*

The Attorney General initially argues the appeal is moot because defendant has already served the jail term imposed following his parole revocation. Our resolution of the appeal can provide no relief to defendant. (*People v. DeLeon* (2017) 3 Cal.5th 640, 645.)[1]

When an appeal raises an issue of public importance that is likely to recur while evading appellate review, it is appropriate for the appellate court to exercise its discretion to nevertheless decide the case on its merits. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1186; *People v. Navarro* (2016) 244 Cal.App.4th 1294, 1298.) The issue raised by defendant "'is likely to recur, might otherwise evade appellate review, and is of continuing public interest.'" (*People v. DeLeon, supra,* 3 Cal.5th at p. 646 [addressing parole revocation hearings].) We therefore proceed to the merits of the appeal.

---

[1] Defendant does not argue that the parole revocation order might impact his criminal record and affect future criminal proceedings against him.

## II.

*WAS THE ORDER REVOKING DEFENDANT'S PAROLE AND COMMITTING HIM TO JAIL AUTHORIZED BY THE CALIFORNIA CONSTITUTION?*

Defendant argues that the postjudgment order revoking his parole and committing him to jail for 120 days was not authorized because a commissioner is constitutionally barred from conducting a parole revocation hearing unless the defendant so stipulates.

A. *Relevant Statutory Authority for Commissioners Presiding at Parole Revocation Hearings.*

Penal Code section 3000.08, subdivision (a), provides that "the court in the county . . . in which an alleged violation of supervision has occurred" shall hear a petition to revoke parole. For purposes of revocation of probation, "'Court' means a judge, magistrate, or revocation hearing officer described in Section 71622.5 of the Government Code." (Pen. Code, § 1203.2, subd. (f)(1).)

Government Code section 71622.5 provides, in relevant part: "(a) The Legislature hereby declares that due to the need to implement the 2011 Realignment Legislation addressing public safety (Chapter 15 of the Statutes of 2011), it is the intent of the Legislature to afford the courts the maximum flexibility to manage the caseload in the manner that is most appropriate to each court. [¶] (b) . . . [T]he superior court of any county may appoint as many hearing officers as deemed necessary to conduct parole revocation hearings pursuant to Sections 3000.08 and 3000.09 of the Penal Code and to determine violations of conditions of postrelease supervision pursuant to Section 3455 of the Penal Code, and to perform related duties as authorized by the court. A hearing officer appointed pursuant to this section has the authority to conduct these hearings and to make determinations at those hearings pursuant to applicable law. [¶] (c)(1) A person is eligible to be appointed a hearing officer pursuant to this section if the person meets one of the following criteria: [¶] (A) He or she has been an active member of the State

4

Bar of California for at least 10 years continuously prior to appointment. [¶] (B) He or she is or was a judge of a court of record of California within the last five years, or is currently eligible for the assigned judge program. [¶] (C) He or she is or was a commissioner, magistrate, referee, or hearing officer authorized to perform the duties of a subordinate judicial officer of a court of record of California within the last five years."

Commissioner Hall unquestionably met the requirements to serve as a parole revocation hearing officer under Government Code section 71622.5, subdivision (c)(1). Defendant does not argue otherwise.

B. *The California Constitution Limits Commissioners to Performing Subordinate Judicial Duties in the Absence of the Parties' Stipulation.*

The question before us is whether the Legislature was authorized by the California Constitution to delegate to commissioners the responsibility for conducting parole revocation hearings and committing parolees to jail without the stipulation of defendant. The California Constitution permits commissioners to perform some, but not all, judicial duties. "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners *to perform subordinate judicial duties*." (Cal. Const., art. VI, § 22, italics added.)[2] The Constitution also permits temporary judges to try a cause if the parties stipulate: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.)

---

[2] "The purpose of the Constitution Revision Commission in proposing this revision was to restate the substance of the existing section [citation] concisely in modern terms [citations] and to extend the authority to use temporary judges to justice courts. [Citation.] Both before and after the 1966 revision of article VI, however, a stipulation of the parties was constitutionally required for one not occupying the office of judge to serve as a temporary judge." (*People v. Tijerina* (1969) 1 Cal.3d 41, 48, fn. omitted.)

5

Defendant argues that, under the California Constitution, the acts of revoking parole and committing a defendant to jail are not subordinate judicial duties that a commissioner may perform in the absence of the parties' stipulation. Our Supreme Court has explained: "[T]he power of a trial court to compel the parties to submit an aspect of a judicial proceeding to a subordinate judicial officer is derived from statute, and only those issues particularly described in the statute may be referred without the consent of the parties." (*People v. Superior Court* (*Laff*) (2001) 25 Cal.4th 703, 734.) "The scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966, when the present constitutional provision was adopted." (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 362.)

C. *Examples of Subordinate Judicial Duties that May Be Performed by Commissioners Without a Stipulation.*

We determine whether a judicial action is a subordinate judicial duty that may be performed by a commissioner without the parties' stipulation by first examining whether, at the time article VI, section 22 was added to the California Constitution, it was an act a commissioner was authorized by statute to perform. If it was not, we analyze whether it is similar in complexity to other acknowledged subordinate judicial duties.

In 1966, Code of Civil Procedure section 259 permitted commissioners to (1) hear and determine ex parte motions for orders and writs, (2) take proof and report factual findings, (3) take and approve bonds and undertakings and to examine sureties, (4) administer oaths and affirmations, (5) take affidavits and depositions, and (6) take acknowledgements and proof of deeds, mortgages, and other instruments. (Former Code Civ. Proc., § 259.) Since that time, section 259 has been amended to allow commissioners to act as temporary judges on the stipulation of the parties; to hear

6

preliminary matters in family law cases and report findings of fact and conclusions of law to the court, including on matters of child custody, child and spousal support, attorney fees and costs, and contempt; to hear actions to establish paternity and to establish or enforce child and spousal support; and to determine uncontested proceedings. (Code Civ. Proc., § 259, subds. (d)–(g), as amended by Stats. 1996, ch. 957, § 1.)

Section 259a of the Code of Civil Procedure, which was in effect in 1966 but has since been repealed, also permitted commissioners to perform the following additional judicial acts in certain counties, "[s]ubject to the supervision of the court": acting as judge pro tempore; hearing and reporting findings of fact and conclusions of law in preliminary family law matters; and hearing and reporting findings of fact and conclusions of law in uncontested family law matters, other than actions for divorce, annulment, or maintenance. (Former Code Civ. Proc., § 259a.)

Other codes enacted or amended since 1966 provide additional duties that may be undertaken by a commissioner without a stipulation by the parties. "The tasks of a commissioner are demanding and varied. Commissioners may: hear and decide small claims cases (Gov. Code, § 72190); conduct arraignments (Gov. Code, § 72190.1); issue bench warrants upon a defendant's failure to appear or obey a court order (Gov. Code, § 72190.2); [and] sit as juvenile court hearing officers (Welf. & Inst. Code, §§ 247-253[3])." (*Settlemire v. Superior Court* (2003) 105 Cal.App.4th 666, 670.) Under Welfare and Institutions Code sections 255 and 256, traffic hearing officers may be appointed to hear and decide charges against a minor for nonfelony violations of the Vehicle Code, as the adjudication of contested traffic infraction cases is a subordinate judicial duty. (*In re Kathy P.* (1979) 25 Cal.3d 91, 97-98.)

In *Rooney v. Vermont Investment Corp., supra,* 10 Cal.3d at page 366, our Supreme Court concluded that "the assignment to court commissioners of certain judicial

_____

[3] We note that the cited Welfare and Institutions Code statutes all reference orders that must be approved, or are subject to review, by a juvenile court judge.

7

duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution." A commissioner may accept a plea and sentence a defendant with respect to traffic infractions and misdemeanors without a stipulation. (*People v. Miner* (1977) 68 Cal.App.3d Supp. 1, 4.) Further, a commissioner may order the forfeiture of bail of a nonappearing defendant as either an ex parte order or as an uncontested proceeding. (*People v. Surety Ins. Co.* (1975) 48 Cal.App.3d 123, 125-127; *People v. Surety Ins. Co.* (1971) 18 Cal.App.3d Supp. 1, 4.)

In *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 297-298, the California Supreme Court held that the summary denial of a petition for a writ of mandamus or a writ of habeas corpus was a subordinate judicial duty that could be performed by a commissioner without the stipulation of the parties. The court relied primarily on "the limited nature of the contemplated decision." (*Id.* at p. 312.) The court specifically noted that "[p]etitioners in the present case do not seek release from confinement, however, and we need not decide in the present case whether the assignment of a commissioner to a case that challenged the prisoner's conviction or otherwise alleged grounds for release from confinement would be constitutional." (*Ibid.*) Ultimately, the court held: "[O]ur conclusion that making the initial determinations required at the ex parte stage of a writ proceeding constitutes a subordinate judicial duty is not based on any belief that the matters sought to be remedied through writs may be characterized as minor or insignificant. Rather, it is based on our recognition that the intent of the 1966 constitutional revision was to authorize commissioners to perform those tasks that had long been authorized under preexisting statutes, and that *the tasks involved in making such threshold determinations are relatively limited and straightforward when compared to 'the diversity and complexity of the other duties of a [superior] court judge.*' [Citation.] Petitioners present no reason to believe that permitting commissioners to

8

make those determinations in any way compromises the availability of the writ to perform its function of safeguarding liberties." (*Id.* at pp. 312-313, italics added.)

To summarize, in 1966, commissioners did not have the authority to conduct parole revocation hearings or set the sanction after revoking parole. The actions of revoking parole and committing a defendant to jail are not similar in diversity and complexity to those judicial duties that commissioners were authorized to perform in 1966. Nor do those actions constitute an exercise of authority over an uncontested matter, even when the defendant admits the parole violation; in such a circumstance, whether to revoke parole and what sanction should be imposed remain contested issues. The responsibility to revoke parole and sanction a defendant with jail time is not a subordinate judicial duty.

D. *Examples of Judicial Duties that May Not Be Performed by a Commissioner Without a Stipulation*.

In *Settlemire v. Superior Court, supra,* 105 Cal.App.4th at page 669, one of the parties to an order to show cause for a domestic violence restraining order refused to stipulate to a hearing by a commissioner. The trial court then referred the matter to a commissioner "pursuant to Code of Civil Procedure section 259(b) for a hearing, and findings on any matter of fact upon which information is required by the Court." (*Ibid.*) The appellate court held this was an impermissible grant of authority to a commissioner. (*Id.* at p. 672.)

Our courts have routinely held that actions that may deprive an individual of his or her liberty are *not* subordinate judicial duties. One appellate court explained: "[T]he issuance of an order which can have the effect of placing the violator thereof in jail is not a 'subordinate judicial duty.' Before a commissioner may act as a judge the *parties litigant* must so stipulate. Since petitioner was not a party to the stipulation at either hearing . . . the commissioner's acts were null and void." (*In re Plotkin, supra*, 54

9

Cal.App.3d at p. 1017.) In *Nierenberg v. Superior Court* (1976) 59 Cal.App.3d 611, 620, the appellate court held that in the absence of a stipulation, a court commissioner does not have the authority to conduct a contempt proceeding, even if the parties stipulated to the commissioner conducting the underlying trial.

In *People v. Tijerina, supra,* 1 Cal.3d 41, 48-49, a commissioner's order revoking probation was reversed because the defendant did not stipulate to the commissioner acting as a temporary judge. "When the parties have not stipulated that a commissioner may act as a temporary judge, the commissioner has only the authority to perform "'subordinate judicial [duties]'" which do not include the power to sentence a defendant." (*People v. Haendiges* (1983) 142 Cal.App.3d Supp. 9, 15.)

The published authorities clearly distinguish between limited duties that are subordinate judicial duties a commissioner may perform without a stipulation, and duties that involve the deprivation of an individual's liberty, which are not subordinate judicial duties. The parole revocation hearing in this case included the possibility of the deprivation of defendant's liberty. Our holding here is consistent with the longstanding authority of the California Supreme Court and other California courts. Therefore, we must reverse the July 7, 2017 postjudgment order revoking defendant's parole and committing him to 120 days in jail.

### E.  *Government Code Section 71622.5 Is Not Unconstitutional*.

Our holding that the revocation of parole and the commission of a parolee to jail are not subordinate judicial duties that may be performed by a commissioner in the absence of the parties' stipulation does not mean that Government Code section 71622.5 is unconstitutional. The Legislature was constitutionally authorized to permit commissioners to exercise the power to revoke parole if the parties stipulated to the commissioner's authority. When a commissioner attempts to exercise such power in the absence of a stipulation, however, doing so violates the California Constitution.

Government Code section 71622.5 could be improved by adding language to the statute that if the parties do not stipulate to allowing a commissioner to conduct the proceedings, then the commissioner shall make a recommendation regarding revocation of parole and a recommendation regarding the sanction to be imposed, which recommendations must be reviewed and approved, disapproved, or modified by a judge.

This court does not have the authority to read such saving language into the statute. The courts generally may not add language to or delete language from a statute in the process of interpreting it. (See, e.g., *Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 558 ["Where the terms of a statute are plain and not absurd, a court may not presume a drafting error and thereby substitute its judgment for the Legislature's. [Citation.] To do so would contravene our constitutional role, tread into the domain of a coequal branch, and inject intolerable uncertainty into the drafting and lawmaking process, since neither the Legislature nor the public could rely on a court to follow plain statutory language"].) It is permissible to do so in exceptional circumstances, however, to avoid invalidating an entire statute as unconstitutional. "Our own cases reveal that, consistently with *Welsh* [*v. United States* (1970) 398 U.S. 333] and its numerous high court predecessors and progeny, it is appropriate in some situations for courts to reform— i.e., 'rewrite'—enactments in order to avoid constitutional infirmity, when doing so 'is more consistent with legislative intent than the result that would attend outright invalidation.' [Citation.] As explained below, like the high court, we have reformed statutes to preserve their constitutionality in cases concerning classifications otherwise invalid under the equal protection clause, and in cases involving criminal statutes otherwise unconstitutionally vague or overbroad. In addition, our decisions have reformed statutes to confer necessary procedural due process protections, to avoid classifications impermissible under the First Amendment, and to avoid nullification under the judicial powers provision of our own Constitution." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 641.)

11

Adding an express requirement of judicial oversight of a commissioner's parole revocation recommendations would not be consistent with the intent of the statute, which by its terms was intended to allow the delegation of certain judicial duties to subordinate judicial officers.  (See Gov. Code, § 71622.5, subds. (a), (b).)  Accordingly, we respectfully urge the Legislature to make any appropriate amendments to Government Code section 71622.5.

### F.  *The Attorney General's Arguments Are Without Merit.*

Each of the Attorney General's arguments for affirmance fails.  First, the Attorney General argues that defendant's admission of the parole violation at the final revocation hearing means defendant cannot challenge the commissioner's acts of revoking his parole and committing him to jail.  Defendant made his objection to the commissioner at the preliminary hearing; at that time, he specifically objected to the commissioner's participation at both the preliminary and final hearings.  Defendant's admission of his parole violations did not frustrate or cancel his refusal to stipulate to the commissioner.  Because the commissioner lacked the authority to conduct the revocation hearing in the absence of a stipulation, the ensuing postjudgment order based on the commissioner's findings was in excess of his authority, no matter what defendant admitted.[4]

The Attorney General also relies heavily on the California Supreme Court's holding in *People v. DeLeon, supra,* 3 Cal.5th 640 in opposing defendant's appeal.  As we will explain, however, that case does not address the issue presented by defendant on appeal.

---

[4]  The Attorney General states in his respondent's brief on appeal, "Admitted parole violations are appealable post-judgment orders."  (See *People v. Castel* (2017) 12 Cal.App.5th 1321; *People v. Hronchak* (2016) 2 Cal.App.5th 884.)

12

Parolees facing revocation are entitled to due process protections. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 482.) One of those protections is the right to a preliminary hearing "as promptly as convenient after arrest . . . to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." (*Id.* at p. 485.) In *People v. DeLeon, supra*, 3 Cal.5th at page 644, the California Supreme Court held that the Criminal Justice Realignment Act of 2011 did not affect this due process right.

In reaching its conclusion, the court provided the following analysis: "The Court of Appeal expressed concern over 'further burden[ing] our overworked and under-resourced superior courts' by requiring both a preliminary hearing and a final revocation hearing. This legitimate institutional concern, however, cannot justify depriving a parolee of his right to due process of law. Additionally, there are several practical solutions to address this increased burden on judicial resources. First, the preliminary hearing provides a valuable screening tool that will result in some early dismissals, thereby lessening the number of final revocation hearings the court will be required to perform. Second, *Morrissey* does not require that a judge conduct the preliminary hearing. [Citation.] Section 1203.2, subdivision (f) provides that the revocation proceedings may take place before a 'judge, magistrate, or revocation hearing officer described in Section 71622.5 of the Government Code.' That section authorizes the superior court to 'appoint as many hearing officers as deemed necessary to conduct parole revocation hearings pursuant to Sections 3000.08 and 3000.09 . . . .' [Citation.] Third, section 3000.08 contemplates review by the parole agency before the case is submitted to the superior court for revocation. [Citation.] This review may satisfy *Morrissey*'s preliminary hearing requirement if it includes a probable cause determination, conducted reasonably near the place of the alleged parole violation or arrest, by someone not directly involved in the case, with notice to the parolee and an opportunity to appear and defend." (*People v. DeLeon, supra,* 3 Cal.5th at p. 658.)

13

Although *People v. DeLeon* considered the possibility that a commissioner may conduct a preliminary hearing under Government Code section 71622.5 without violating *Morrissey v. Brewer's* requirement of due process, it did not address the constitutionality of section 71622.5's authorization of commissioners to conduct final parole revocation hearings, at which the parolee's liberty is at issue, in the absence of a stipulation by the defendant.

The Attorney General, wisely, does not argue that by enacting Government Code section 71622.5, the Legislature itself was determining that the revocation of parole and imposition of sanctions were subordinate judicial duties within the meaning of the California Constitution. "In deciding whether the Legislature has exceeded its power, we are guided 'by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, "we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited." [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used."' [Citations.] On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate."'" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284-285.)

14

DISPOSITION

The postjudgment order is reversed for further proceedings on defendant's parole revocation matter.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.