Filed 1/5/26  Turcios v. Superior Court CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HENRY TURCIOS,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | No. B343717<br><br>(Super. Ct. No. 24CAPR05114) |

ORIGINAL PROCEEDINGS; Petition for Writ of Mandate. Kjehl T. Johansen, Commissioner.  Petition denied.

Ricardo D. García, Public Defender, Albert Menaster, Lisa Gordon and Natasha Brown, Deputy Public Defenders, for Petitioner.

Clyde & Co. US and Douglas J. Collodel; Leah C. Gershon, Court Counsel, for Respondent.

Nathan J. Hochman, District Attorney, Felicia Shu and Matthew Brown, Deputy District Attorneys, for Real Party in Interest.

_____

## I.    INTRODUCTION

After a court commissioner denied petitioner Henry Turcios's request for release or bail pending a petition to revoke his postrelease community supervision (PRCS), petitioner filed a petition for writ of habeas corpus which we construed as a petition for writ of mandate.  Petitioner contends that presiding over a bail review hearing is not one of the "subordinate judicial duties" that commissioners are constitutionally permitted to perform, absent a stipulation by the parties.  We deny the petition.

## II.    BACKGROUND

On December 3, 2024, the Los Angeles County Probation Department filed a petition to revoke petitioner's PRCS pursuant to Penal Code sections 1203.2 and 3455.[1]  A Los Angeles County Superior Court commissioner reviewed the petition and supporting documents and found that probable cause supported the requested revocation.  It therefore preliminarily revoked

_____

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

2

PRCS, denied petitioner bail, and ordered that he be remanded into custody.

On December 26, 2024, petitioner appeared before a Los Angeles County Superior Court commissioner for arraignment on the petition. Petitioner's counsel requested that petitioner be released on bail or his own recognizance. Counsel declined to stipulate to the commissioner conducting the bail review hearing and argued that, absent a stipulation, the commissioner was not authorized to preside over that hearing. The commissioner overruled the objection and conducted the hearing. Following argument, the commissioner denied petitioner's request and ordered that petitioner remain remanded to custody.

On January 31, 2025, petitioner filed a petition for writ of habeas corpus, requesting an order vacating the denial of bail and requiring a qualified bench officer to conduct the bail review hearing. This court construed the petition as a request for writ of mandate and, on May 12, 2025, issued an alternative writ of mandate tentatively concluding that petitioner was entitled to relief.

On July 2, 2025, and July 18, 2025, the Los Angeles County District Attorney's Office (District Attorney) and the Los Angeles County Superior Court, respectively, filed returns. On August 18, 2025, petitioner filed a traverse.[2]

---

[2] The revocation hearing was scheduled for February 18, 2025. And the maximum sanction for a PRCS violation is 180 days of county jail confinement. (See § 3455, subd. (d).) Thus, the petition for writ of mandate is likely moot. We nonetheless exercise our discretion to decide this petition because "[t]he issue 'is likely to recur, might otherwise evade appellate review, and is of continuing public interest.'" (*People v. DeLeon* (2017) 3 Cal.5th 640, 646.)

3

# III.  DISCUSSION

A.  *PRCS*

"PRCS was created as part of the 2011 Criminal Justice Realignment Act (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1), which 'changed the paradigm for the incarceration and postconviction supervision of persons convicted of certain felony offenses.' [Citation.] 'In the wake of realignment, a person released from prison is subject to a period of either parole (§ 3000 et seq.) or postrelease community supervision (§ 3450 et seq.). [Citation.] Parole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes. (§ 3451, subd. (b).) All other released persons are placed on postrelease community supervision. (§ 3451, subd. (a).)' [Citation.]" (*People v. Steward* (2018) 20 Cal.App.5th 407, 417.)

"[PRCS] is similar, but not identical, to parole. A felon who qualifies for PRCS may be subject to supervision for up to three years after his or her release from prison. (§ 3451, subd. (a).) This supervision is conducted by a county agency, . . . rather than by the state's Department of Corrections and Rehabilitation. [Citations.]" (*People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399.) "PRCS and parole supervision have different procedures to prove violations. [Citation.] But once violations have been established, the statutes governing PRCS and parole supervision share the same maximum period for custodial confinement—180 days. (§§ 3000.08, 3451, subd. (d).) In this respect, the Legislature intended to treat PRCS and parole supervision

4

violators similarly." (*People v. Garcia* (2018) 22 Cal.App.5th 1061, 1064.)

"Some PRCS conditions are mandated by statute. (§ 3453.) The county supervising agency also has authority to 'determine additional appropriate conditions of supervision . . . , order the provision of appropriate rehabilitation and treatment services, determine appropriate incentives, and determine and order appropriate responses to alleged violations, which can include, but shall not be limited to, immediate, structured, and intermediate sanctions up to and including . . . flash incarceration in a city or county jail.' (§ 3454, subd. (b).)" (*People v. Gutierrez*, *supra*, 245 Cal.App.4th at p. 399.) "If the supervising agency determines that intermediate sanctions are not appropriate, the agency shall petition the court pursuant to section 1203.2 to revoke, modify, or terminate PRCS. (§ 3455, subd. (a).)" (*Id.* at p. 400.)

B.     *Government Code Section 71622.5*

The Legislature has authorized commissioners, without a stipulation by the parties, to preside over PRCS and parole hearings. Indeed, the 2011 Criminal Justice Realignment Act authorized the superior courts to "appoint as many hearing officers as deemed necessary to conduct parole revocation hearings . . . and to determine violations of conditions of postrelease supervision . . . , and to perform related duties as authorized by the court. A hearing officer appointed pursuant to this section has the authority to conduct these hearings and to make determinations at those hearings pursuant to applicable law." (Gov. Code, § 71622.5, subd. (b).)

5

"A person is eligible to be appointed a hearing officer pursuant to this section if the person meets one of the following criteria:  [¶]  (A) He or she has been an active member of the State Bar of California for at least 10 years continuously prior to appointment.  [¶]  (B) He or she is or was a judge of a court of record of California within the last five years, or is currently eligible for the assigned judge program.  [¶]  (C) He or she is or was a commissioner, magistrate, referee, or hearing officer authorized to perform the duties of a subordinate judicial officer of a court of record of California within the last five years."  (Gov. Code, § 71622.5, subd. (c)(1).)   Petitioner does not dispute that the commissioner who presided over the bail review hearing here met the requirements to serve as a PRCS violation hearing officer.  Instead, he contends that regardless of the legislative authority described above, commissioners, absent a stipulation by the parties, may not, consistent with our Constitution, preside over PRCS bail review hearings.

C.    *Commissioners and Subordinate Judicial Duties*

"The California Constitution permits commissioners to perform some, but not all, judicial duties.  'The Legislature may provide for the appointment by trial courts of record of officers such as commissioners *to perform subordinate judicial duties*.'  (Cal. Const., art. VI, § 22, italics added.)  The Constitution also permits temporary judges to try a cause if the parties stipulate:  'On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the

cause.' (Cal. Const., art. VI, § 21.)" (*People v. Berch* (2018) 29 Cal.App.5th 966, 972, fn. omitted (*Berch*).)[3]

"The words 'subordinate judicial duties' were intended by the draftsmen as an appropriate constitutional phrase sufficiently broad to permit specific details to be later enacted or adopted by the legislative or rulemaking agencies.  [Citations.] . . .  [¶]  The scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966, when the present constitutional provision was adopted." (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 362.)

---

[3]  The District Attorney contends that, because parole revocation proceedings were historically conducted by the executive branch (see, e.g., *In re Prather* (2010) 50 Cal.4th 238, 249), presiding over such proceedings (and by extension, PRCS revocation proceedings), does not constitute a "judicial duty." According to the District Attorney, the duties under Government Code section 71622.5 have always been "subordinate" and not proscribed by article VI, section 22 of the California Constitution. The superior court raises a similar argument.  We disagree.

By enacting Government Code section 71622.5, the Legislature conferred authority over parole and PRCS revocation proceedings to the judiciary.  (See Gov. Code, § 71622.5, subd. (b) [authorizing "the superior court" to appoint hearing officers to conduct parole and PRCS revocation proceedings].)  Thus, presiding over a PRCS revocation hearing now constitutes a judicial duty, subject to the laws governing the judiciary.  Indeed, the Legislature recognized that hearing officers appointed pursuant to Government Code section 71622.5 may exercise their authority to conduct PRCS and parole revocation hearings "pursuant to applicable law." (*Ibid.*)

"We determine whether a judicial action is a subordinate judicial duty that may be performed by a commissioner without the parties' stipulation by first examining whether, at the time article VI, section 22 was added to the California Constitution, it was an act a commissioner was authorized by statute to perform. If it was not, we analyze whether it is similar in complexity to other acknowledged subordinate judicial duties." (*Berch*, *supra*, 29 Cal.App.5th 966, 973; see *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 311 [examining whether a commissioner duty "may 'properly be ranked as "subordinate" in relation to the diversity and complexity of the other duties of a [superior] court judge'"].)

In 1966, Code of Civil Procedure section 259 provided that "[e]very court commissioner shall have power:  [¶]  1.  To hear and determine ex parte motions for orders and writs . . . ;  [¶] 2.  To take proof and report his conclusions thereon as to any matter of fact other than an issue of fact raised by the pleadings, upon which information is required by the Court . . . ;  [¶]  3.  To take and approve bonds and undertakings whenever the same may be required in actions or proceedings in such Superior Courts, and to examine the sureties thereon . . . , and to administer oaths and affirmations, and take affidavits and depositions . . . , and to take acknowledgments and proof of deeds, mortgages, and other instruments . . . ;  [¶]  4.  To charge and collect the same fees for the performance of official acts . . . ;  [¶] 5.  To provide an official seal . . . ;  [¶]  6.  To authenticate with his official seal his official acts." (Code Civ. Proc., former § 259, as amended by Code Civ. Proc. Amends. 1880, ch. 35, § 1, pp. 51– 52; see *Gomez v. Superior Court*, *supra*, 54 Cal.4th at p. 307.)  It is undisputed that in 1966, commissioners were not authorized to perform bail review hearings in the context of PRCS revocation

proceedings.  Thus, we consider whether presiding over such bail review hearings is a duty that is similar in complexity to other acknowledged subordinate judicial duties.

Our Supreme Court has provided guidance on what constitutes a "subordinate judicial duty" in *In re Kathy P.* (1979) 25 Cal.3d 91, at page 99, which affirmed that the adjudication of juvenile infractions is a "subordinate judicial duty."  In so concluding, the court noted that "punishments for infractions are markedly lighter than for other offenses" and "'the unique and specialized function of trying infraction cases . . . could properly be ranked as "subordinate" in relation to the diversity and complexity of the other duties of a [superior] court judge.' [Citation.]"  (*Id.* at p. 98, fn. omitted.)  The court also noted that "[g]iven their nature, the high volume of infraction cases . . . clearly necessitates simplified procedures for their fair and efficient disposition."  (*Ibid.*)

Similarly, in *Gomez v. Superior Court*, *supra*, 54 Cal.4th at page 298, the court concluded that "the summary denial of a writ petition constitutes a 'subordinate judicial dut[y]' properly undertaken by a commissioner within the meaning of article VI, section 22 of the California Constitution."  The court explained that its "conclusion that making the initial determinations required at the ex parte stage of a writ proceeding constitutes a subordinate judicial duty is not based on any belief that the matters sought to be remedied through writs may be characterized as minor or insignificant.  Rather, it is based on [the court's] recognition that the intent of the 1966 constitutional revision was to authorize commissioners to perform those tasks that had long been authorized under preexisting statutes, and that the tasks involved in making such threshold determinations

9

are relatively limited and straightforward when compared to 'the diversity and complexity of the other duties of a [superior] court judge.' [Citation.]" (*Id.* at pp. 312–313.) The court, however, expressly reserved ruling on whether "the assignment of a commissioner to a case that challenged the prisoner's conviction or otherwise alleged grounds for release from confinement would be constitutional." (*Id.* at p. 312.)

Other examples of subordinate judicial duties that commissioners may perform, absent a stipulation, include: hearing and deciding small claims cases (Gov. Code, § 72190); conducting arraignments (*id.*, § 72190.1); issuing bench warrants upon a defendant's failure to appear or obey a court order (*id.*, § 72190.2); sitting as a juvenile court hearing officer (Welf. & Inst. Code, §§ 248–253); deciding preliminary matters in prescribed domestic relations matters, including motions or petitions for custody of children, support, costs and attorney fees (Code Civ. Proc., § 259, subd. (e)); and hearing actions to establish paternity and enforce child and spousal support orders (*id.*, § 259, subd. (f)). (*Settlemire v. Superior Court* (2003) 105 Cal.App.4th 666, 670.) "Further, a commissioner may order the forfeiture of bail of a nonappearing defendant as either an ex parte order or as an uncontested proceeding. [Citations.]" (*Berch, supra*, 29 Cal.App.5th at p. 974.)

We thus consider whether presiding over a bail review hearing on a PRCS revocation is "at the same or comparable levels of responsibility" to other commissioner duties (*Rooney v. Vermont Investment Corp., supra*, 10 Cal.3d at p. 365), and not "'divers[e]'" or "'complex[ ]'" in relation to duties performed by superior court judges (*Gomez v. Superior Court, supra*, 54 Cal.4th at p. 311). Our Supreme Court has described bail hearings for

10

pretrial arrestees as "'typically informal affairs.'" (*In re Harris* (2024) 16 Cal.5th 292, 313.)

Our record on the mandate petition demonstrates that the bail review hearing here was even more informal than a bail hearing for a pretrial arrestee. The parties' arguments regarding bail comprise only three pages of the reporter's transcript, and the commissioner's ruling is half a page in length.[4] No party presented testimony and the only evidence submitted was the revocation petition, which included a declaration of probable cause, and the violation report, "[b]oth submitted under [the] penalty of perjury." Neither party argues that the proceedings here are unusual for a bail review hearing on a petition to revoke PRCS. Although the decision of whether a petitioner should be released on bail pending a revocation hearing is neither minor nor insignificant, the decision is "relatively limited and straightforward when compared to 'the diversity and complexity of the other duties of a [superior] court judge.' [Citation.]" (*Gomez v. Superior Court, supra*, 54 Cal.4th at p. 313.)

D. *Liberty Interests and* Berch

Petitioner nonetheless contends that, pursuant to *Berch, supra*, 29 Cal.App.5th 966, "the issuance of an order which can have the effect of placing the violator thereof in jail is not a 'subordinate judicial duty.'" In *Berch* the Court of Appeal held that "revoking parole and committing a defendant to jail for violation of parole are not subordinate judicial duties that may be

---

[4]    The commissioner categorized the bail hearing as "a more expedited hearing as to whether [petitioner] poses a flight risk or a danger to public safety."

11

performed by a commissioner in the absence of a stipulation by the parties." (*Id.* at p. 969.) The court reasoned that "[o]ur courts have routinely held that actions that may deprive an individual of his or her liberty are *not* subordinate judicial duties." (*Id.* at p. 975.) The *Berch* court cited in support *In re Plotkin* (1976) 54 Cal.App.3d 1014, 1017 and *Nierenberg v. Superior Court* (1976) 59 Cal.App.3d 611, 620, each of which concluded that a commissioner did not have authority to conduct a contempt proceeding absent stipulation; *People v. Tijerina* (1969) 1 Cal.3d 41, 48–49, which held that a commissioner, without a stipulation by the parties, could not revoke probation; and *People v. Haendiges* (1983) 142 Cal.App.3d Supp. 9, 15, which held that "[w]hen the parties have not stipulated that a commissioner may act as a temporary judge, the commissioner has only the authority to perform "'subordinate judicial [duties]'" which do not include the power to sentence a defendant. [Citation.]" (*People v. Berch*, *supra*, 29 Cal.App.5th at p. 975.) We disagree that *Berch* requires the granting of the petition here.

  *Berch*, *supra*, 29 Cal.App.5th 966 does not require a finding that a commissioner is precluded from presiding over a PRCS bail review hearing because such hearings do not implicate the liberty interests that underlie the holding in that case. Deprivation of liberty refers to both the federal constitutional right under the Fourteenth Amendment to the United States Constitution that no state shall "deprive any person of life, liberty, or property without due process of law" and article I, section 7, subdivision (a) of the California Constitution that "[a] person may not be deprived of life, liberty, or property without due process of law." "[T]he revocation of parole[, however,] is not part of a criminal prosecution and thus the full panoply of rights due [to] a

defendant in such a proceeding does not apply to parole revocations." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480 (*Morrissey*).) Indeed, in *In re Law* (1973) 10 Cal.3d 21, our Supreme Court held that a parolee has neither a federal nor state constitutional right to bail in the context of revocation hearings and thus, a parolee who was placed on a parole hold[5] by the Adult Authority, the predecessor to the Board of Parole Hearings, is not entitled to bail. (See *id.* at p. 25 ["Petitioner does not refer us to any provision of the federal Constitution from which we are able to discern even a suggestion that a parolee charged with a violation while conditionally released on parole, has a right to remain at liberty through a bail procedure similar to that in the case of those charged with but not convicted of a crime"].) Although *In re Law* considered whether a parolee had a right to bail, its rationale would apply with equal force to a PRCS revocation proceeding given the similar nature of parole and PRCS.

Moreover, *Berch, supra*, 29 Cal.App.5th 966 is distinguishable because it considered whether a commissioner who adjudicated a final parole revocation hearing was exercising

---

[5] "A 'parole hold' occurs when a parole agent or other representative of the [Adult] Authority causes a parolee to be restrained in custody independent of any action by the decision-making component of the [Adult] Authority. The situation occurs (1) when the parole agent believes that the parolee has violated a condition of parole, (2) when the parolee has been arrested on a new criminal charge—a prima facie violation of parole, or (3) when a parolee is completing a local jail sentence during which time the [Adult] Authority may determine whether to maintain parole status in view of the conviction which resulted in the jail sentence." (*In re Law, supra*, 10 Cal.3d at p. 23, fn. 2.)

a "subordinate judicial duty."  Indeed, the *Berch* court expressly distinguished the facts in that case from *People v. DeLeon*, *supra*, 3 Cal.5th 640, which noted that a hearing officer could preside over a preliminary hearing pursuant to Government Code section 71622.5.  "*Morrissey* does not require that a judge conduct the preliminary hearing.  (*Morrissey*, *supra*, 408 U.S. at p. 486.)  Section 1203.2, subdivision (f) provides that the revocation proceedings may take place before a 'judge, magistrate, or revocation hearing officer described in section 71622.5 of the Government Code.'"[6]  (*People v. DeLeon*, *supra*, 3 Cal.5th at p. 658.)  The *Berch* court explained:  "Although *People v. DeLeon* considered the possibility that a commissioner may conduct a preliminary hearing under Government Code section 71622.5 without violating [*Morrissey*'s] requirement of due process, it did not address the constitutionality of section 71622.5's authorization of commissioners to conduct final parole revocation hearings, at which the parolee's liberty is at issue, in the absence of a stipulation by the defendant."  (*Berch*, *supra*, 29 Cal.App.5th at p. 978.)  Here, the bail review hearing conducted by the commissioner resulted in a preliminary, not a final, determination about whether PRCS would be revoked.  Accordingly, the liberty interest concerns articulated in *Berch* do not prevent a commissioner from presiding over a bail review hearing in a PRCS revocation petition.

---

[6]  As noted above, section 1203.2 also applies to PRCS revocation proceedings.  (*People v. Gutierrez, supra*, 245 Cal.App.4th at p. 400.)

E.    *Legislative Deference*

Our conclusion is also consistent with the deference accorded to the Legislature's interpretation of Government Code section 71622.5 which found the enactment constitutional.  "In deciding whether the Legislature has exceeded its power, we are guided 'by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature.  [Citations.]  Two important consequences flow from this fact.  First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.]  In other words, "we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited." [Citation.]  [¶]  Secondly, all intendments favor the exercise of the Legislature's plenary authority:  "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action.  Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used."' [Citations.]  On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate."' [Citation.]" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284–285; accord, *Berch, supra*, 29 Cal.App.5th at pp. 978–979.)

15

For the reasons stated above, we conclude that a commissioner may, consistent with our Constitution, conduct a bail review hearing in the context of PRCS revocation proceedings.

## IV.   DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

I concur:

BAKER, J.

*Turcios v. Superior Court Los Angeles County*, B343717

HOFFSTADT, P. J., Concurring in the judgment.

I join the majority in concluding that a bail review hearing, following the initial setting of bail but prior to the final revocation hearing for postrelease community supervision, entails only "subordinate judicial duties" within the meaning of the California Constitution (Cal. Const., art. VI, § 22), and hence may be presided over by "hearing officers" who are not judges, as provided for in Government Code section 71622.5. My joinder, however, rests on the record presented on appeal in this case.

As the majority notes, whether a task entails only "subordinate judicial duties" turns on whether the task resembles those duties deemed to be subordinate back in 1966 (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 364 (*Rooney*)), which, in turn, looks to a variety of factors including:

-- Whether the matters to be presided over are uncontested (*Rooney*, *supra*, 10 Cal.3d at p. 366 [hearing of "particular preliminary and uncontested" traffic "matters"; subordinate]; *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 297–302, 309–310 [ex parte denial of petitions for writs of habeas corpus addressing conditions of confinement rather than the legality of custody and entailing whether a prima facie showing is made; subordinate]);

-- The significance of what is to be decided (*People v. Berch* (2018) 29 Cal.App.5th 966, 975 (*Berch*) [determination of whether defendant is sentenced to incarceration after a final revocation hearing; not subordinate, and collecting cases]; cf. *In re Kathy P.* (1979) 25 Cal.3d 91, 97–98 [juvenile traffic

infractions; subordinate]; *People v. Lucas* (1978) 82 Cal.App.3d 47, 54 [traffic infractions; subordinate];

      -- The complexity of the matter to be decided (*Settlemire v. Superior Court* (2003) 105 Cal.App.4th 666, 670–675 [family law matters required resolution of "multiple factual issues"; not subordinate]); and

      -- The finality of what is to be decided (*Berch*, *supra*, 29 Cal.App.5th at pp. 969–970 [final parole revocation hearing; not subordinate]; cf. *People v. DeLeon* (2017) 3 Cal.5th 640, 658 [preliminary revocation hearing; subordinate, in dicta]).

      The task at issue here is a bail review hearing at the midpoint of proceedings to revoke postrelease community supervision. The pertinent factors as to whether the person presiding over such a hearing is engaged in subordinate judicial duties cut both ways. On the one hand, bail review hearings are usually contested and necessarily resolve—at least on an interim rather than final basis—the significant issue of liberty. These factors cut in favor of a finding that it is not a subordinate judicial duty. On the other hand, the matter of bail review in this case was not complex, as the majority notes. But that is because the brief bail review hearing in this case focused almost entirely on preserving the legal issue at the heart of this appeal rather than the actual question of bail itself. On this record, I agree that the general presumption in favor of the constitutionality of statutes tips the balance in favor of upholding the use of Commissioners.

      However, a different and more fulsome record regarding how bail review hearings in the postrelease community supervision revocation process operate in general might yield a different analysis and, hence, a different outcome. The maximum

2

period of incarceration following the revocation of postrelease community supervision is 180 days (Pen. Code, § 3455, subd. (d)); if bail is denied at a bail review hearing, the time spent in jail pending the final revocation hearing may equal or exceed the jail time ultimately imposed, such that any interim deprivation of liberty may equal or exceed the final deprivation. And the twin issues involved in bail review—flight risk and danger to the community (*In re Humphrey* (2021) 11 Cal.5th 135, 154)—can also be quite nuanced and complex, particularly if the parties elect to present testimony and documentary evidence. Thus, a different record may significantly alter how the pertinent factors shake out.

But until such a record is presented, I join the result reached by the majority in this case.


_____, P. J.
HOFFSTADT

3